Reserved three minutes for rebuttal? Thank you, Your Honor. If I may, I would like to start just going over briefly the facts, given there was a motion to dismiss on the pleadings, the facts that the court should have taken or should have accepted as true when deciding the case. And I will just go over them very briefly because I think it would help for my argument further on. The court would have to accept that both the appellant and the appellee enter into carryover agreements, that these carryover agreements were binding in nature, that in these carryover agreements the parties agreed to what the eligible basis for both projects would be. And the Housing and Economic Recovery Act provided additional low-income housing tax credits to Puerto Rico and determined the way in which those credits had to be allocated to eligible projects, such as the projects billed by appellants. And the way to allocate those additional credits was to increase the applicable percentage to whatever percentage had been agreed upon before to 9%. Remember, the applicable percentage times the eligible basis gives you the tax credits that the projects were allowed to have per year. After appellant received those credits, those credits were seized by appellants instead of given out to the projects. And that to me is key. That's the whole issue of this case. That is why I argue that there is federal jurisdiction under 1983. There is, except that, I mean, you've got some problems with that argument, but you've got problems before you ever get to that argument. Your first problem is that there was never a timely opposition to the motion for judgment on the pleadings. And the district court treated that failure as a waiver. That decision under our precedent is reviewed for abuse of discretion, which is a tough standard of review. Now, the facts aren't really in dispute. There's no question but that the opposition, that no opposition was timely filed. Isn't that correct? Yes. May I expand on that, Your Honor? I understand. You told us in the brief that you've got an excuse for why you didn't file on time, but the fact remains that you didn't file on time. Well, I somewhat disagree, Your Honor, because the... You did file on time? The opposition to the report or recommendation? No, not to the report. To the magistrate's order. The opposition to the motion for judgment on the pleadings. No, that is correct. Yeah. You didn't file that on time. That is correct. Why isn't that a waiver? Why is the district court wrong? Okay, then I will get into that, Your Honor, for two reasons. The first reason is that the magistrate judge said I could raise those arguments in my objections to the R&R. Those objections were filed on a timely basis. Then, when I filed the objections to the R&R, I quickly moved to strike those objections because... Precisely because of arguing that there was a waiver. The district judge denied that motion and then reviewed the case de novo and included and took into consideration our arguments. So, I would submit to Your Honor that the... Didn't the judge indicate that he was doing that just for thoroughness? He did. He didn't say that there was a waiver. He did. In fact, he said the contrary. He said there was a waiver. That's correct. That's what I'm saying to Judge Thompson. He did say that. However, he did say that he did review the record. The record was he did review our opposition and he made a de novo review of the report on recommendation. So, he did review the recommendation. One thing I would like to note is that we are talking about six days, Your Honor. And six days... And I hate... It's quite frankly, it's mind-blowing to me that six days could lead to somebody, a client of mine, losing their day in court. But time limits mean something, Congressman. No, no. Of course. I understand. So, you want us to excuse six days? Do we excuse seven? Do we excuse eight? No, I'm not trying... No, but that's not really much of an argument. Well, it is in this way. And I'm not trying to be cute or anything like that. I'm really not. If you look at the trajectory of this case, this case had been litigated actually by both sides in a very consistent, very responsible and efficient manner. We had our meetings. We had initial discoveries. We were serving interrogatories to each other. We had a joint case memorandum. I mean, there was nothing on the record to suggest that the case was not moving very smoothly. And I say that on both parties because, I mean, Appenly was litigating the case very professionally and the case was moving along beautifully. Now, my point is, I would... I would like to submit to the court that before depriving somebody of their right to debate in court, maybe I should have been sanctioned. Maybe something else should have been done by the court instead of just saying within six days there is a waiver. I mean, it's over. That seems to be that the punishment does not fit the crime, quite frankly, given that the case was moving along in such an expeditious and responsible manner. Can you cite any authority to that effect, that it's an abuse of discretion for a district court to hold an attorney to a clear violation of a timeline? I cannot at this point, but I can file a 28-day waiver. But I cannot at this point, off the top of my head. But now past that, you've got another problem. The district court also found that in any event your action was filed late. Was time barred? Yes. Okay. For the action to be time barred, there had to be adequate notice from a plea, and there was none. You had all the tax notices. Sure. All right. Tax... there was a stack about this thick. I mean, you could see them in the appendix. There were 341 tax forms. Right. And the tax... You didn't have to do anything that day. You have a year from the time you get those 341 tax notices. Yes, but if I may, Your Honor. Yes? For that to be the day where the statute of limitations starts running, there had to be adequate notice. No. I'm sorry. The date of approval starts on the date when you have in your possession all of the information that you need to know that the government has taken a position adverse to you. You had all of that information. It's right there in the tax credits. The government doesn't have to spell that out for you. It's presumed that you or your client, you know, will read and understand what's on the tax forms. Your Honor, I could not find... there's no case... there's... getting back to citation of case law, there's no case law... no court has ever held that going over 341 tax forms, adding up all the numbers in those forms constitutes adequate notice. When, in fact, by looking at the form, you think that an appellee had complied with the requirements of the Housing Economic Recovery Act because they included the 9%. So it's somewhat of a tricky situation. You see the forms. They were given to you the same day they had to be filed. You sign them. You see it's 9%. You think it's fine. And then you send them off. But you add up the numbers. If you trouble to add up the numbers, you see they're not fine. But is that adequate notice, Your Honor? I mean, that's not adequate notice. I mean, you could... eventually the numbers were added up. Absolutely. And then my client sent emails to the state agency. So you think that the state agency has an obligation to add the numbers up for you before the cause of action occurs? No. The state agency has an obligation to say, listen, we are not bound by HERA. We will not give you additional credits because we think that the credits that you have are sufficient for the financial feasibility of the project. That's it. That's all they had to say. What stopped an appellee from saying that? That's all they had to say. That's all you want to know? I'm sorry? I go back to the same point where the judge is questioning. The whole point of this is that we're going to get the increase. You might have 300 and some odd documents, but from... if it were my client, what I would want to make sure is they're going to get the increase that's been provided for us. Well, what's so hard about that? So hard about adding up 341? You're interested in making sure your client gets the money. Sure. And you've had those documents in your possession for a year. The only question is, to your client, do I get the money? Sure. I mean, what comes before? I mean, the horse or the carriage? It's sort of what I'm trying to get to now. I mean, why... before that burden is placed on my client, I think the burden first belongs to the state agency that has to issue adequate notice. Then let me try it this way. When do you claim that you got notice? On the date of the email where the state agency responded what they had done. That they had just... And where did they tell you to go look in regards to that notice? Undoubtedly, Your Honor. If we added up those lines, we knew there was something wrong. That's why my client started sending emails. But the thing is, that doesn't mean that that was the state agency's final decision. They could have issued additional 8609s. So at that point, even though we had added up all the lines and figured out there might be something wrong here, that doesn't mean that the state agency was planning to issue more 8609s, which could have been the case. And that's why my client started sending emails to the state agency trying to figure out what happened. So we have an agency that includes in the 8609s the 9% applicable percentage. And it's sort of, quite frankly, sort of led us to believe, led my client to believe, that they I'm talking about a one-day, a one-day lateness, so to speak. If we assume that April 15th was the day when the statute of limitations began to run, I think the Baldwin factors apply in this case, too, which I included in my brief. I mean, I don't think we should excuse the state agencies hiding their decision within those 341 forms by saying, oh, well, you should have added them all. I mean, you're such a dummy that you didn't. Well, we might be dummies. I agree that. I can, I certainly am. But I mean, that doesn't excuse the state agency from How is this different from the accounting malpractice cases where the accountant gives the client the work product, and the client just signs off on it, the accountant doesn't say anything, and then two or three years later the client discovers that the accountant made a mistake, and we run the statute of limitations from the date of the original submission of the work product? Well, the difference is that the accountant is not required to provide due notice. The state agency is. Why is that? I'm sorry? Why is that? Because that's the foundation. I mean, Goldberg v. Scali, the Supreme Court case, administrative agencies have You're talking about for due process liability, all right? But the fact of the matter is the accrual of the statute of limitations, all right, doesn't directly incorporate due process principles. The law says that you have to have, you have to be on notice of facts sufficient to let you know that you have been injured, and you had all, that's the kind of notice that you're entitled to in a statute of limitations inquiry. Well And that sort of notice you had 341 times over. You had the facts. Two things, Your Honor. I think it's different from the case you said, like the case you state agency has to overcome, a greater standard regarding due notice. That's one thing. And second, due notice presumes openness. That's what it is. I mean, you have to let what was presented, what was preventing the state agency from saying, Judge Bolden, Judge Thompson, this is what I did. That's it. Two sentences in the transmittal memo. Not sending 341 forms the same day that they were due, and just, you know, signing them off and getting them off to the IRS. And again, I think if Your Honor believe, still thinks that the statute of limitation began on April 15th, I think that they can be excused a one day tardiness with the, regarding the Baldwin factors. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Jose Luis Amiles Cull on behalf of the defendant, Aparalee, the Executive Director of the Puerto Rico Housing Finance Administration. I want to address quickly the one issue regarding waiver. Counsel gave the impression that we filed the motion to strike, and since it was denied, that the judge did not consider our series of documents that were included in our reply to the motions regarding the report and recommendation, and the judge denied the motion to strike, but allowed us to reply. It considered our waiver arguments, and ruled that there was waiver, but in the interest of fairness, as Your Honors mentioned, he went on to decide all the other subjects that were, that were before the Court. As to statute of limitations, I want to clarify something regarding these 341 forms. The reason why there are so many forms, and you can verify this in page 110 of the appendix, which is one of the motions by plaintiffs, is because plaintiffs themselves requested it, and the reason for that request is because it is in their interest to have it that way. As you might recall, there is a series of requirements to keep these credits along a 15-year period, and if any of these requirements are not met, you can lose the credits and the IRS can actually recapture those credits given by splitting the apartment building into several units and calling each unit a building. If one of the apartments fails to comply, you would get a recapture of only those credits, and you would keep the remainder of the credits. So it's in their interest to have so many forms, and they actually requested the agency to do so. It would have been easier for the agency to just sign one form for each apartment complex and be done with it. Now, as your Honor pointed out, the forms specifically state what the credit amount is, what the applicable percentage is, and what the qualified basis is. All the information is there. Further, it must be pointed out that only one form is issued at the beginning of the credit period, and that's it. And that same form is used by the accountants along the process every time, every successive year, their income tax returns are filed. And so, even throughout the year and in the next tax cycle, they would have looked at the forms and figured out how much was granted in credits in order to fill in the next income tax return. There's no other obligation from the agency, and it's stated as such in 26 CFR 142.1 TV 8.2. I apologize for the long numbers, but it's in our brief on page 7 and 8, and it says specifically that housing credit allocations are being made when the forms 8, 6, or 9 are signed by the executive director. Nothing else has to be done. There was a transmittal letter sent, but it's a mere formality. The transmittal letter says here are the forms. That's it. That's what the law requires, and that's what adequate notice is. Furthermore, if you look at the form, the form itself has a section where the taxpayer has to acknowledge receipt and under the penalty of perjury attest that the information in the form is correct, that it stems from representations made to the agency. And therefore, not only does the party have a duty to find out whether they have a cause of action under the accrual jurisprudence, they also have a duty to make sure the information is correct because they actually signed the forms as receipt. And I will direct the owner's attention to page 81 in our appendix where you see one of the forms signed by the plaintiff's representative. Now, since counsel did not have much time, but I'm sure he'll address this in his term for rebuttal, I just wanted to briefly tackle the $64,000 question as to what did the AHERA amendments to section 42 do, and why didn't plaintiffs have an entitlement to additional credits? And the answer is quite simple. The amendments might have created eligibility to additional credits, but they did not create an entitlement. The credits are determined based on all the factors of section 42, including section 42M, which requires the agency to make a determination as to the financial feasibility and viability of the project, considering all sources of funds. And I would like to set this hypothetical, but not so hypothetical example. Let's say that we have a qualified basis of $10 million, and the applicable percentage is 8. Of course, once we do the multiplication, we're going to get credits in the amount of $8 million through a 10-year period. Let's say that that taxpayer is receiving other sources of funds, such as permanent financing for the agency in the amount of $2 million. If after the AHERA amendments, we multiply the same $10 million, because the basis didn't change, the costs remain the same, by a 9% figure, of course we're going to get $9 million. However, that taxpayer was already receiving $2 million in credits, and I'm sorry, in other sources of financial assistance, in permanent financing, for example. So you would have a taxpayer, a developer, receiving $11 million for a project that just needs 10, and the agency would have lost $1 million that it could use to provide to other projects. Now, one could argue, well, of course, you could give that taxpayer $9 million in credits, and reduce the financial assistance from other sources to $1 million, but it's completely within the agency's discretion how to combine all the sources of funds to make the project viable. Of course, for a developer, it's more profitable, perhaps, to receive credits instead of other sources of funds, but again, the agency is not in the business of helping developers make a profit, it's in the business of making housing available, and as long as it is viable, the agency has complied with the requirements of Section 42. Now, I want to make something abundantly clear, and at no point, neither at the pleading stage, nor before the district court, nor before this court, have plaintiffs argued that they received less than all the funds that were originally planned for the the exact amount that was allocated or reserved in the carryover allocation agreements, or other forms of assistance. Of course, your owners do not have before you the exact figures, because this case was resolved on a motion for judgment at the pleading stage, however, if you look at one of the cost certifications that was included with plaintiff's briefing, specifically at page 980 of the appendix, you will see that this project did have other sources of funds. It had a mortgage from Puerto Rico Housing, and it had other sources of assistance. Again, at no point have plaintiffs argued that they did not receive all the sources allocated for the project. The project was built, it was placed in service, that's why they received the credits, and it was occupied, therefore, it clearly was viable. Whether in the interplay between these sources of funds, plaintiffs could have made more or less, whether they have an entitlement to additional credits. We must keep in mind that these credits are a finite dollar amount, and these credits are granted yearly by, pursuant to a formula that stems from the very statute, by the IRS. And once they run out, they're gone for that year until the new cycle begins. Now, the agencies, what they allocate in the taxpayer, and the agency has the certainty that it has used those credits in addition to other credits distributed to other taxpayers. Plaintiffs do not have a property interest in a particular qualified basis. The same, the very agreement plaintiff cites states that the qualified basis is an estimate. You must bear in mind that qualified basis is a function of eligible basis, which is based, in turn, on a number of factors pursuant to occupancy rates, types of construction, and, of course, from the time the agreement is signed until the construction actually is finished, many things can happen. And the qualified basis, the eligible basis can change. It can go up and down, and the qualified basis can change. Therefore, they're just estimates. What is locked at the time of the agreement is a maximum amount of credits, which they, in fact, received. If the qualified basis goes down, they may receive less. If the qualified basis goes up, a new allocation needs to be done because, again, these credits are reserved, and that, in fact, happens in this case. In 2006, Las Catalinas received an allocation, and in 2007, it received an additional allocation, and a second agreement was executed because the basis had gone up. The only thing that's reserved is the dollar amount, and that amount stayed the same. Plaintiffs perhaps could have received more credits after the HERA amendments because the ceiling went up after the 9% formula is applied. However, they don't have an entitlement to them. They have to be allocated through a new allocation, and in this case, that was just not necessary. I will refer your honors, lastly, to Section 1.42-1TD2, which is page 8 in our brief, that the maximum credit percentage and qualified basis amount allowable under Section 42 can be moved up and down, and it can be adjusted by the agency when the financing and rental assistance from all other sources for the project of which the building is a part of is sufficient to provide a continuing operation of the building without the maximum credit amount allowable under Section 42. Of course, HERA fixed the 9% applicable percentage, so the agency, indeed, when it filed the forms and it filled them out, moved the qualified basis as provided by the regulations themselves, and indeed, as provided in the instructions, which are also a part of the record. It is the only way, because otherwise, as in my hypothetical example, plaintiffs would have received more than they actually needed if all the numbers are kept the same and all the sources of funds are constant, which indeed was the case here. So, if your honors do not have any further questions, I will rest on my brief. Thank you. Thank you, Your Honor. I agree with most of what my brother says, but I think also my brother's argument sort of supports my point. My brother said that the agency has to make a determination as to whether or not the additional credits granted by HERA would exceed the minimum credits that would make the project financially feasible, and that is correct. So, my question to my brother and to the Court is where is that determination? It is not in the record. We never received that determination. So, that is why everything I said before is pretty much based on that. They had a duty to make a determination to see if HERA did exceed the amount of credits that we should be entitled to, and they had to inform that determination. Why isn't that determination implicit in the form that you provided? How could it be? Because it sets forth their figures. No, because actually if you look at the, I am going to get a bit technical. If you look at the instructions of 8609, it says that it has to be, that the state agency has to put 9% as the applicable percentage unless they feel that they made a determination that using 9% will provide excess credits. So, it would have been implicit, Your Honor, if they had used a number less than 9%, for example, 8.75, 8.5. You look at the form and you say there is something wrong right there. They made a determination. But when you look at 9% and they bury their determination within 341 forms, I don't think it is implicit. And again, a second thing that goes against the implicit, so to speak, of the determination is which cost did they disallow? I mean, they reduced the basis. And contrary to what my brother said, I think the carryover agreements do provide property interest on that eligible basis as long as we comply with all the requirements. But which cost did they disallow? I mean, the concrete for the third floor, the bathroom tiles, we don't know. I mean, what cost were reduced? Which ones? Which ones did not apply here? Or why are the additional credits, why would they exceed the amounts that were needed? By how much? We don't know that. They didn't make any determination. So that's my point why there was no due notice. Thank you, Your Honor.